## Case No. 13,311.

### STARLING v. HAWKS.

[5 McLean, 318.] [1]

Circuit Court, D. Ohio. Oct. Term, 1851.

COURTS—FEDERAL JURISDICTION—REAL PARTIES.

1. Where from the facts of the case a conveyance of land appears to be only colorable, with the view to give jurisdiction to the courts of the United States, the writ will be dismissed, on motion or on a plea.

[Cited in Blackburn v. Selma, M. & M. R. Co., Case No. 1,467.]

2. If the suit is to be prosecuted under the direction of the grantor, and at his expense, and where he has the option within a stipulated time to take back the land, on returning the bond; and where a similar right is given to the grantee, it is sufficient to show that the object of the conveyance was, to give jurisdiction to the circuit court of the United States, and for the benefit of the grantor.

[This was an action by Lyne Starling against J. Hawks. Heard on motion to dismiss.]

Mr. Backus, for plaintiff.

Swan & Andrews, for defendants.

McLEAN, Circuit Justice. A motion is made to dismiss this cause for want of jurisdiction, on the ground that the land claimed, was conveyed to the lessor of the plaintiff by Sullivant, to give jurisdiction to this court to prosecute a suit for the benefit of the grantor.

Mr. Backus stated, as counsel, which was admitted by the other party, that there were many cases involving the title to land to a large amount, pending in Champaign county. That from the trial of one of them he, as counsel, became convinced, from the local interest felt, and consequent influence on the juries, a fair trial could not be had in that county; and that he advised the conveyance made by Mr. Starling to the lessor of the plaintiff, for the consideration of twenty thousand dollars, in order that suits might be prosecuted to settle the title at the expense of the grantor. And it was agreed that if, at the end of five years, the grantee should prefer, he had the privilege to re-convey the land; that if sales could be made, the proceeds should be paid over to the grantor, in payment for the lands. And that Sullivant executed deeds of general warranty for the lands sold.

The following correspondence took place in making the arrangement: In a letter dated 5th of August, 1848, after complaining of the influence brought to bear on the jury, on one of the trials, for a part of the land, which caused a verdict against Sullivant, Mr. Backus states: "Sullivant and myself now propose

[1] [Reported by Hon. John McLean, Circuit Justice.]

to sell the tracts to you. Our title you are acquainted with, and as to the value of the land you are as able to judge as we. It has been estimated at various amounts from ten to sixty thousand dollars. We will sell it to you for twenty thousand dollars, payable in five years, with interest, upon the condition, that is, if at the expiration of five years, you should make default in the payment of the purchase money, the land shall be re-conveyed, and your note given up. In other words, the condition shall not operate as a mortgage in favor of either party; and if at the end of the time, you should not choose, or it should be inconvenient to make the payment, and take the land, we cannot compel you to do so. But upon re-conveyance we shall be compelled to release you from the payment of the purchase money. We, on the other side, should you be allowed to force us to look to a sale of the land for the purchase money, or to yourself upon your note, being as you are a citizen of New York, you would be more favorably situated, so far as regards litigation, than we, because you can bring your suits in the United States courts, and be beyond the local prejudice and feelings of the people of the county where the land lies." Another letter was dated 22d Aug., 1848, in which Mr. Starling says: "I am pleased with your proposition to sell me the Lee lands in Champaign, and I accept your proposition without hesitation, and enclose you my note for the purchase money. The legal title is in William; let him execute the proper conveyances, and deliver them to you. Do you place them on record, and prosecute the suits for the recovery diligently in the manner you shall deem conducive to my interest." On the 3d September, 1851, Mr. Starling writes: "I promptly accepted your offer to purchase the Lee lands upon the terms you proposed. I intended to have enclosed you a note for the purchase money, but believe I neglected to do it, and I now enclose it, dated August 22d, which is about the time I wrote to you."

Under the above circumstances the conveyance was executed, and suits, for the recovery of the lands, were commenced. A conveyance of land may be made with the express view of giving jurisdiction to the courts to the United States, and if it be an absolute, bona fide conveyance, it is good. This is the right of every citizen. A person may change his citizenship for this purpose; and the motive with which the conveyance was executed, or the change of citizenship was made, though avowed, if both were done in good faith, it constitutes no objection to the exercise of jurisdiction. In a conveyance of land for this purpose, the only question is, is it an absolute conveyance without conditions, that it shall enure to the benefit of the grantor. If it be colorable only, it is a fraud on the law, and jurisdiction in the federal court is not sustainable. The deed is absolute on its face. The condition, whether expressed in the deed or out of it, if inoperative as to a transfer of

jurisdiction, would not destroy the validity of the deed, only for the purpose of giving jurisdiction to this court.

The contract stipulates that the agreement should not operate as a mortgage, but suppose a mortgage on the land had been given to secure the payment of the consideration. The conveyance would have been absolute, and the jurisdiction undoubted. But this is not the character of the conveyance. The grantor had the option to rescind the contract at the end of five years. He was not bound to do so, but it was a right secured to him. This shows the nature of the transaction, and the purpose for which it was entered into. In addition to this the suits were to be prosecuted at the expense of the grantor, which authorizes the inference that the suits were to be brought for his benefit. Starling was not obliged to take the land, but had the right to relinquish it, on which the grantor was bound to deliver up his obligation. This shows the conveyance was not intended to be absolute. There is no immorality in this. It was simply a device and a contrivance to change the jurisdiction, with a view of obtaining a trial free from local prejudices. This, indeed, is a laudable motive, and there can be no objection to it, except that the law, and the policy of the law, are against it. The case of McDonald v. Smally, 1 Pet. [26 U. S.] 623, was different from this, in several important particulars. The title was absolute upon its face, and an adequate consideration was expressed in the deed. There was no condition for a re-conveyance, no promise to aid in the prosecution of the suit, nor that the grantor would pay the expense. Upon the whole, we are satisfied, from the facts of this case, that the conveyance was colorable only, and with the view to give jurisdiction to this court; the suit is, therefore, dismissed.